Mattie P. DOWNEY, Plaintiff,

v.

J. C. PENNEY COMPANY,
INC., Defendant.

Civ. A. No. 77–G–0364–S.

United States District Court,
N. D. Alabama, S. D.

Feb. 27, 1979.

Hugh A. Locke, Jr., Birmingham, Ala., for plaintiff.

J. Fredric Ingram, Julia S. Waters, Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GUIN, District Judge.

This action came on for trial on January 8, 1979, and the issues having been duly tried, the Court hereby makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Plaintiff, Mattie P. Downey, is a female citizen of the United States and a resident of the State of Alabama.

2. Defendant, J. C. Penney Company, Inc. is incorporated in the State of Delaware, does business in Jefferson County, Alabama, and is an "employer" within the meaning of Section 701(b) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

3. Plaintiff was initially employed on January 5, 1970 in the capacity of Manager of the Custom Decorating Department at the defendant's Western Hills Mall store in Jefferson County, Alabama.

4. The position of Custom Decorating Manager, at all times material to this action, was a first level management position which was exempt from the overtime provisions of the Fair Labor Standards Act. The position was considered by the defendant to be non-developmental, meaning that employees in that position traditionally remained in that position with virtually no opportunity to be promoted in the store management structure. In addition, in the position description of Custom Decorating Manager, there was a "volume staffing criteria" which required, among other things, that the department generate annual gross revenues in the amount of $250,000 or more in order to justify the position of Custom Decorating Manager. This "volume staffing criteria" remained in effect during the entire tenure of plaintiff's employment with the defendant.

5. The position of Custom Decorating Manager was different from that of "Department Manager" within the defendant's management personnel structure. Among the differences was the fact that the position of Department Manager did not have volume staffing criteria requirements.

6. Effective on March 31, 1973, plaintiff was terminated by defendant.

7. On March 22, 1973, plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging that with respect to her termination, she was discriminated against on the basis of sex, in violation of Section 706(f) of the Civil Rights Act of 1964.

8. The EEOC issued plaintiff a "Right-To-Sue" letter on December 14, 1976, and she timely filed this action on March 14, 1977.

9. On or about August 6, 1972, while employed at the Western Hills Mall store of J. C. Penney, Mattie Downey went on paid sick leave due to a back condition.

10. In early October, 1972, the newly appointed District Manager of defendant, Charles Dawson, made his initial visit to the Western Hills Mall store and reviewed store operations, including the personnel and staffing of that store. At the conclusion of that visit, the District Manager directed Peter A. Bybee, the Store Manager, to abolish the position of Custom Decorating Manager, due to the fact that that position had never met the volume staffing criteria of $250,000 per annum nor was the department likely to meet that criteria in the foreseeable future. On that same occasion, he directed that Mr. Bybee accord the plaintiff a position as a custom decorator.[1] Mr. Dawson left the implementation of that directive to Mr. Bybee, the Store Manager.

11. Under the personnel policies and practices of the defendant, the Store Manager could not effect the abolition of the position, and the possible termination of the plaintiff, while she was out on paid sick leave and until he was able to receive from her a physician's release which released her fully to return to work.

12. The directive given by Mr. Dawson to abolish her position was in no way related to or premised upon the plaintiff's performance with respect to certain annual sales estimates for her department.[2]

---

1. As a matter of credibility, the Court finds that, in fact, the instructions were given to Mr. Bybee by Mr. Dawson in light of the fact that said instructions were confirmed by Robert Hill, the then Personnel Manager of the Western Hills Mall store. Mr. Hill was advised by both Mr. Bybee and Mr. Herb Givens, the then District Personnel Manager, that the position was to be abolished for failure to meet volume staffing criteria and that the plaintiff was to be offered another position as a custom decorator. Furthermore, during the year 1972, the Custom Decorating Department had gross sales of only $146,000.

2. Plaintiff testified that in her exit interview on March 21, 1973 with the Store Manager, Peter A. Bybee, he advised her that her job was being abolished because she failed to make her sales "quota". However, in the statement of agreed facts filed with the Court the plaintiff admitted that Bybee told her that her position was abolished for "failure to meet volume staffing criteria" and plaintiff is bound by that agreed fact. The EEOC determination appears to have been premised, at least in part, upon the fact that plaintiff's performance of her 1970–1973 annual sales estimates were higher on a percentage basis than some other departments managed

13. On January 29, 1973, the plaintiff first returned to the store after her absence in August of 1972. On that occasion, she was informed by Peter A. Bybee, the Store Manager, that she could not return to work without a release from her physician. Plaintiff left the store, obtained the release, and returned to the store. The release, in effect, would only allow plaintiff to return to work on a "partial" or "light duty" basis.[3]

14. Upon returning home on January 29, 1973, plaintiff found her son seriously ill and advised the store the following day that her son was ill and that she did not know when she could return to work.

15. On February 3, 1973 plaintiff came to the store for the primary purpose of accepting and processing the application of Mrs. Mary Brown for a position as a custom decorator. On that occasion, plaintiff encountered Robert Hill, the then Personnel Manager of the store, who advised her that she could not return to work without a full release from her physician.[4]

16. At the direction of the Store Manager, on March 15, 1973 Mr. Hill wrote plaintiff a letter asking her to come in to the store at her convenience to discuss her job with Mr. Bybee.

17. On March 21, 1973 plaintiff returned to the store and had a conference with Mr. Bybee. Simultaneously, she presented to him a full doctor's release dated March 21, 1973 which released plaintiff to return to work immediately. At that meeting, Mr. Bybee informed her that her position had been abolished by a directive issued in October, 1972; that the reason for the abolition of her position was that it had not met its volume staffing criteria[5] and that while he expressed reservations about her physical ability to perform the work of custom decorator, he offered her the position of custom decorator, without any reservations or limitations.[6] Plaintiff, in effect, rejected the position of Custom Decorator and asked for a position as Department Manager of another department. Mr. Bybee did not offer her such a position because she was not qualified, having worked only in a limited capacity with the defendant, and because the store was, at that time, overstaffed and had a person filling each Department Manager position. Plaintiff did not specifically reject the position of Custom Decorator, but neither did she accept the position on that occasion. Plaintiff refused to sign her termination documents and left the store.

18. On February 3, 1973, plaintiff's paid sick leave expired and defendant, by and

by male employees, and that the male "managers" were not terminated. However, both Bybee and Hill credibly testified that plaintiff's performance with respect to her annual sales quota played no part in the determination to abolish her position and that managers are not terminated for failure to meet any annual sales estimate. This fact was confirmed by plaintiff's witness, Ann Goodwin. Therefore, the Court concludes that the EEOC determination was based upon an erroneous premise, that is, that plaintiff was terminated because of her performance with respect to the annual sales estimate.

3. There is a dispute whether plaintiff actually handed the release to Mr. Bybee or whether, as Mr. Bybee testified, the release was left on his desk. While the resolution of this conflict is not material to the resolution of the issues in this action, in light of Mr. Bybee's testimony that he was in district meetings on that occasion and knew previous to the 29th that he could not effectuate the abolition of her position without a full return to work release, it is more probable that plaintiff placed the release

on Mr. Bybee's desk in his office and did not hand it to him personally.

4. There is a dispute in the testimony as to whether plaintiff's encounter with Mr. Hill was acrimonious. Such dispute is immaterial to the issues in this case and need not be resolved.

5. See Footnote 2.

6. There is a dispute as to whether the position as a Decorator was offered to plaintiff with the continuation of her service and benefits. However, the Court finds that plaintiff was offered the position of Custom Decorator with continuation of benefits. Mr. Bybee's testimony is corroborated by that of Robert Hill's, who testified that shortly after the March 21 meeting, Mr. Bybee advised him that he had offered the plaintiff a position as a Custom Decorator and Bybee made no mention to him of any conditions imposed thereon. Furthermore, the Court finds that Mr. Bybee had been instructed by Mr. Dawson to offer the position to plaintiff without any conditions imposed thereon.

through its Store Manager, elected to place plaintiff on "leave of absence—ill health" until March 31 in order that her benefits could be continued during that period of time. When Mr. Bybee did not hear from plaintiff regarding her acceptance of the position as Custom Decorator by March 31, 1973, he terminated her employment.

19. Around the middle of April, 1973, plaintiff called Mr. Bybee and inquired about the availability of the custom decorator's job. Mr. Bybee again offered her the position but advised her that she would have to be re-employed as a new employee in light of the fact that under defendant's personnel policies, a Store Manager had no authority to reemploy any former employee with a continuation of service and benefits.

20. During 1972, the year when the determination was made to abolish plaintiff's position, there were 16 positions at the Western Hills Mall store which contained "volume staffing criteria" and which were staffed. During that year, all of the positions, with the exception of the Custom Decorating Department Manager, met the applicable volume staffing criteria. Other positions, such as Department Managers, had no volume staffing criteria and were assigned, basically, at the discretion of the Store Manager.[7]

21. The Custom Decorating Department at the Western Hills Mall store was organized and operated under uniform policies applicable to all such in-store Custom Decorating Departments throughout the defendant's chain. Plaintiff's method of compensation, with respect to overrides on sales,

and the method of crediting sales to that department was the same method utilized by the defendant throughout its other in-store Custom Decorating operations.

22. The position descriptions, for all positions, are uniformly applied throughout the defendant's chain and are originated and issued by its corporate headquarters. Neither the position of Custom Decorating Manager nor the Custom Decorating Department at the Western Hills Mall store was treated or organized any differently from other in-store Custom Decorating Managers and Departments.

23. The EEOC determination, particularly in light of the testimony of Mr. Birmingham, the investigating agent, is obviously erroneous in a number of respects.[8] Nevertheless, that portion of the determination reflecting a statistical analysis of male and female terminations, which has not been challenged, reflects that during the period of October 3, 1972 to October 22, 1973, 60.7% of the work force was female and 39.3% was male. However, 60.5% of those terminated during this period of time were male and only 39.5% of those terminated were female, reflecting that a much *lower* percentage of females were terminated as compared to their percentage of representation in the work force. In substance, the determination reflects that there was no discrimination, on a statistical basis, with respect to the termination of female employees.

24. In September of 1973, a company-wide management reorganization program

---

7. It is true that in June of 1973 the "volume staffing criteria" for the position of Custom Decorator was reduced to $120,000. However, Mr. Bybee testified credibly, and the Court finds, that at the time the determination was made to abolish plaintiff's position, neither he nor anyone else had any reason to believe that the criteria would be lowered. Furthermore, even after the criteria was lowered, the position of Custom Decorating Manager at the Western Hills Mall store was not filled because it did not receive the District Manager's approval. One of the criteria needed to authorize the position of Custom Decorator Manager is the approval of certain management officials, on either a regional or district basis, and that approval was

never given to fill that position at any subsequent time.

8. As an example, in attempting to determine the number of male and female "managers" during the years 1970 through 1973, the investigator counted many of the male "managers" twice and excluded at least one female "manager" (Rachel Davis) who was there during the years 1972 and 1973. While not critical to the resolution of the issues in this action, it does appear that the percentage of female "managers" during the years 1970 through 1973 were considerably higher than reflected in the determination, the correct percentages ranging from 30% to 35%.

was instituted at the Western Hills Mall store, the purpose of which was to give greater flexibility in the utilization of management employees and to provide developmental opportunities for certain positions, such as Department Heads, which were previously thereto considered to be non-developmental.

25. The 1973 reorganization had no effect on the position of Custom Decorating Manager and plaintiff's termination was in no way related to or affected by the September, 1973 reorganization.[9]

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this action, pursuant to the provisions of Section 706(f) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–5(f).

2. Defendant is an "employer" within the meaning of Section 701(b) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

3. Plaintiff has satisfied all jurisdictional prerequisites to suit required by Title VII of the Civil Rights Act of 1964, as amended.

■ 4. Assuming *arguendo* that plaintiff established a prima facie case pursuant to the requirements set out in *McDonald Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), through the testimony of plaintiff and the EEOC determination[10] this Court concludes that the defendant "articulated" and, indeed, proved a legitimate, non-discriminatory reason for having abolished plaintiff's position

as Custom Decorating Manager and for, thereafter, terminating plaintiff's employment. *Bd. of Trustees of Keene State College v. Sweeney,* —— U.S. ——, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Furnco Construction Co. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). The "legitimate, non-discriminatory reason" articulated and proved is that plaintiff's department, the Custom Decorating Department, never met nor was likely to meet its volume staffing criteria ($250,000 in annual sales) for a Custom Decorating Manager position and that the Store Manager, Peter A. Bybee, was given a directive by his District Manager, Charles Dawson, to abolish the position for that reason, and that reason alone.

■ 5. Plaintiff's position was not abolished, nor was the plaintiff terminated by the defendant, because of her sex or because of the application of any criteria which had a sexually disparate effect upon females. Therefore, defendant did not unlawfully discriminate against the plaintiff in violation of Section 703(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2(a). As to those positions which had "volume staffing criteria", the Court finds that the promulgation and application of these criteria were uniform throughout defendant's stores and there is no evidence of any disparate effect with respect to female employees regarding the promulgation and application of "volume staffing criteria".

6. Alternatively, the Court concludes that defendant's Motion for an Involuntary

---

**9.** There was considerable testimony as to the abolition of certain job titles, the creation of new job titles, and the conversion of existing management employees in the sales area from the old job titles to the new job titles. However, since the reorganization had no relationship to the termination of the plaintiff, a detailed discussion and findings relative to these matters are not necessary for the resolution of the issues in this action.

**10.** Plaintiff's prima facie case is, at best, weak, particularly in light of the fact that the EEOC determination, and the investigative documents upon which it is based, contains erroneous statistical analysis and is based on an erroneous

premise, that is, that plaintiff was terminated because of her performance with respect to her 1972 annual sales estimates. Furthermore, the statistical analysis regarding the ratio of females to males terminated, as compared with the percentage of participation of females in the work force is, in fact, *favorable* to the defendant. The foregoing, combined with the fact that plaintiff agreed with defendant, in the statement of agreed facts submitted to the Court, that Bybee told her, on March 21, 1973, that her position had been abolished for failure to meet volume staffing criteria, renders plaintiff's prima facie case tenuous, at best.

Dismissal, pursuant to Rule 41(b), F.R. Civ.P. is due to be, and is hereby granted because, even assuming, *arguendo,* that plaintiff has established a prima facie case, plaintiff has not proved by a preponderance of the evidence that she was terminated because of considerations based upon sex.